SO ORDERED

SIGNED this 23 day of June, 2023.

_____
Pamela W. McAfee
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

GERALD BRADLEY HUNSUCKER AND
MARGARET JENNINGS HUNSUCKER,

    DEBTORS

CASE NO.
22-01689-5-PWM
CHAPTER 13

## MEMORANDUM OPINION ON MOTION TO MODIFY

The matter before the court is the motion to modify the confirmed chapter 13 plan filed by the chapter 13 trustee (the Trustee) on March 7, 2023, D.E. 24 (the Motion). The debtors filed a response in opposition to the Motion on March 28, 2023, D.E. 25. After proper notice, a hearing was conducted on April 27, 2023 in Raleigh, North Carolina.

## PROCEDURAL HISTORY

Gerald Bradley Hunsucker and Margaret Jennings Hunsucker filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on August 1, 2022. The Hunsuckers filed their schedules, D.E. 10, and their chapter 13 plan, D.E. 11 (the Plan) on August 15, 2022. Schedule A/B indicates that as of the petition date, the Hunsuckers did not own any trust, equitable, or future interest in property. D.E. 10 at 7. Schedule I indicates that the Hunsuckers did not expect an increase or decrease in their income within one year after filing their petition, D.E. 10 at 23.

The Plan was confirmed on October 4, 2022. D.E. 15. The Plan provides that the applicable commitment period is 36 months and that the liquidation value of the estate pursuant to 11 U.S.C. § 1325(a)(4)[1] is $0.00. The Plan did not provide for a dividend to be paid to general unsecured creditors. Two general unsecured claims were filed in the Hunsuckers' case prior to the claims bar date on October 11, 2022, and of those claims, Mrs. Hunsucker is obligated on only one: Claim No. 2, filed by Portfolio Recovery Associates, LLC in the amount of $1,398.93 (the Claim).

Postconfirmation, Mrs. Hunsucker received the amount of $100,000 (the Funds) through either a trust distribution or bequest, as described below.[2] The Trustee filed the Motion to require Mrs. Hunsucker to modify the Plan to pay Portfolio's claim in full, either in a lump sum or through increased Plan payments over time. The Trustee contends that the Funds received by Mrs. Hunsucker are an inheritance, bequest, or devise as contemplated in § 541(a)(5)(A), and thus are property of the bankruptcy estate subject to payment of claims of general unsecured creditors through a modification of the Plan pursuant to § 1329. The Trustee's position is that Mrs. Hunsucker's ability to repay her creditors has improved since confirmation of the Plan due to her receipt of the Funds, and as a result the Plan should be modified to pay in full the one allowed general unsecured claim on which Mrs. Hunsucker is obligated.

The Hunsuckers oppose the Motion, contending that the Funds derive from an interest in a trust with an enforceable restriction on transfer and are for that reason excluded from the bankruptcy estate pursuant § 541(c)(2). Alternatively, if the Funds are property of the estate, the Hunsuckers argue that modification is not appropriate because: (1) a change in the liquidation value of the estate is not a proper basis for modification; (2) Mrs. Hunsucker's interest in the Funds

---

[1] Unless otherwise noted, all statutory references are to Title 11, United States Code.
[2] The court has no evidence as to whether Mrs. Hunsucker had any knowledge of the trust or bequest prior to receipt of the Funds.

2

vested in Mrs. Hunsucker at confirmation, meaning the Funds are not subject to the claims of creditors; and (3) the Trustee's proposed modification is not made in good faith as required by § 1325(a)(3) because the proposed modification violates the purpose and spirit of the Bankruptcy Code and §§ 541(c)(2), 1325(a)(4), and 1327.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a statutorily core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O) that this court is authorized to hear and determine. The United States District Court for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

Long before the petition was filed, on or about July 14, 2003, Frank G. Jennings executed his Last Will and Testament (the Will) in New York, New York. Mr. Jennings appears to be a relative of Mrs. Hunsucker. The Will, which is governed by New York law, created the Frank G. Jennings Trust (the Trust) in Article Six. Per its terms, the Trust was created for the benefit of Robert W. Smith, who was named the lifetime beneficiary of the Trust. The primary asset of the Trust was real property in New York, New York, and the stated intent of the Trust was "that Robert [Smith] continue to live in his present apartment for the rest of his life so that he may continue to enjoy the standard of living to which he was accustomed immediately before my death, and I direct that this Will be construed to effectuate that intent." D.E. 25 at 9-10.

The Trust further provides, in relevant part:

On the death of Robert this trust shall terminate and the principal of the trust, as then constituted, together with any undistributed income on hand and accrued income, shall be divided into as many separate, equal shares as shall be necessary to create one such share for each then living niece or nephew of mine . . . and such shares shall be disposed of as follows:
   (1) Each share created for a niece or nephew of mine shall be transferred and paid over to such niece or nephew. . . .

D.E. 25 at 10.

Mrs. Hunsucker was apparently a niece of Mr. Jennings. Robert Smith, the lifetime beneficiary of the Trust, died on September 24, 2022, approximately fifty-four days after the Hunsuckers filed their bankruptcy petition. Following Mr. Smith's death, the Trust terminated and the trustee proceeded with administration and distribution of the assets. On December 23, 2022, Mrs. Hunsucker received the Funds as a distribution from the trustee in the amount of $100,000.

## DISCUSSION

**I.    WHETHER THE FUNDS ARE PROPERTY OF THE BANKRUPTCY ESTATE**

The initial question before the court is whether the funds came into Mrs. Hunsucker's bankruptcy estate in the first place. Section 541 defines property of the bankruptcy estate for all chapters of the Bankruptcy Code, and provides in § 541(a)(1) that a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." In addition to the interests of the debtor existing as of the petition date, § 541(a)(5) provides, in relevant part, that the bankruptcy estate includes

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
   (A) by bequest, devise, or inheritance[.]

4

11 U.S.C. § 541(a)(5)(A).

In a chapter 13 case, § 1306(a) expands the scope of § 541 to include "all property of the kind specified in § 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of [the Bankruptcy Code], whichever occurs first." Reviewing this language, the Fourth Circuit observed, in one of the controlling cases on this topic, that "[w]ith Section 541, Congress established a general definition for bankruptcy estates. With Section 1306, it then expanded on that definition specifically for purposes of Chapter 13 cases." *Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013). Addressing the types of property described in § 541(a)(5) specifically, *Carroll* held that § 1306's extended timing expands the 180-day temporal restriction such that property described in § 541(a)(5) that is acquired by the debtor at any time before the case is closed, dismissed, or converted becomes property of the estate. *Id*. at 152; *see also In re Zeitchik*, Case No. 09-05821-8-JRL, 2011 WL 5909279, *1 (Bankr. E.D.N.C. Sept. 23, 2011) ("[I]n a chapter 13 case, any inheritance that is received before the case is closed, dismissed or converted is property of the estate.").

There is no factual dispute pertaining to creation of the Trust: it was created within the Will, rather than being executed by separate document or created at a later time. Accordingly, the Trust is, by definition, a testamentary trust. Upon termination, the remaining then-existing income and principal of the Trust were to be distributed to the various beneficiaries identified within it. In this case, the Hunsuckers' petition was filed on August 1, 2022. The Trust terminated fifty-four (54) days later, on September 24, 2022. Mrs. Hunsucker actually received the Funds on December 23, 2022, one hundred forty-four (144) days after the petition was filed. The interest was one

5

received through bequest or devise, acquired within 180 days after the petition was filed. Absent more, the analysis would end here.

The "more" derives from § 541, which specifically excludes certain types of property from the bankruptcy estate. Section § 541(c)(2) provides that if "applicable nonbankruptcy law" enforces restrictions on the transfer of a debtor's interest in a trust, those restrictions are enforceable in bankruptcy and the trust interest is excluded from the bankruptcy estate. *See In re Putman*, 110 B.R. 783, 791 (Bankr. E.D. Va. 1990).

The Hunsuckers argue that the Funds derive from an interest in a trust with an enforceable restriction on transfer, which would support their exclusion from the bankruptcy estate pursuant to § 541(c)(2). Specifically, Mrs. Hunsucker relies on that section's exclusion of spendthrift trusts from the estate; that reliance is not sufficient, however, because the Funds do not fall within that section simply by virtue of having flowed from a trust. At the hearing, neither party identified a provision in the Trust that expressly restricts the alienation of Mrs. Hunsucker's remainder interest or her ability to transfer or assign her interest once it became possessory. Instead, Mrs. Hunsucker contends that it is New York law that imposes a restriction on the transfer of her interest. The burden is on the debtor to prove that the funds at issue are excluded from the bankruptcy estate by nonbankruptcy law, pursuant to the provisions of § 541(c)(2). *In re Foster*, 556 B.R. 233, 237 (Bankr. E.D. Va. 2016).

New York law provides that the interest of a beneficiary of any trust may be assigned or otherwise transferred. N.Y. Est. Powers & Trust Law § 7-1.5(a) (McKinney 2023); *see also* 106 N.Y. Jur. 2d Trusts § 209 (citing *In re Alton's Trust*, 55 Misc. 2d 985, 286 N.Y.S.2d 906 (1968)). However, there is an exception to the general rule that trust interests are freely alienable, upon which Mrs. Hunsucker relies:

6

> (a) The interest of the beneficiary of any trust may be assigned or otherwise transferred, *except that*:
>> (1) The right of a beneficiary of an express trust to *receive the income from property and apply it to the use of or pay it to any person* may not be transferred by assignment or otherwise unless a power to transfer such right, or any part thereof, is conferred upon such beneficiary by the instrument creating or declaring the trust.

N.Y. Est. Powers & Trust Law § 7-1.5(a)(1) (emphasis added). Stated differently, an *income interest* in a trust is inalienable unless the trust or relevant document creating the trust expressly provides otherwise, and that income interest must be held by the beneficiary of an express trust.

The presumption of inalienability established in N.Y. Est. Powers & Trust Law § 7-1.5(a)(1) is inapplicable to Mrs. Hunsucker's interest. Her remainder interest was not an interest in the income of the Trust – she was not a lifetime beneficiary, and she was not entitled at any point during the existence of the Trust to receive Trust income, apply it to the use of property, or pay it to any person. With no specific limitation in the Trust or applicable law restricting transfer, Mrs. Hunsucker's interest in the Trust is not excluded from the bankruptcy estate by § 541(c)(2).[3]

Finding no applicable exclusion, the court concludes that the Funds are property of the estate pursuant to §§ 541(a)(5)(A) and 1306. Having so found, the court turns to whether the receipt of the Funds postconfirmation requires modification of the Plan.

## II.   MODIFICATION OF THE PLAN

### A.   Section 1329 Requirements for Modification

Postconfirmation plan modification is governed by § 1329. In the Fourth Circuit, there are three requirements for plan modification under §§ 1329(a)(1) and (a)(2), as set forth in *Murphy v.*

---

[3] In addition, and as an alternative basis for the court's holding, once the Trust terminated upon the death of Mr. Smith, the money distributed was no longer subject to the terms of the Trust. In other words, the Funds were not an asset of the Trust subject to any limitations contained in the Trust, as the Trust no longer operated to govern the use of the Funds. *See In re Whitfield*, No. 19-00688-5-DMW, 2020 Bankr. LEXIS 2901 (Bankr. E.D.N.C. Oct. 16, 2020).

O'Donnell (*In re Murphy*), 474 F.3d 143, 150 (4th Cir. 2007), and *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989). First, modification is allowed only where there has been an unanticipated, substantial change in the debtor's financial situation;[4] otherwise, the doctrine of *res judicata* precludes modification of the confirmed plan. *Murphy*, 474 F.3d at 150. Second, the purpose of the proposed modification must be one that is identified in § 1329(a). *Id*. Finally, the proposed modification must comply with § 1329(b)(1), which establishes the confirmation requirements applicable to modified plans. *Id*. Because plan modification under § 1329(b)(1) includes a good faith requirement, this third factor also requires a court to consider whether modification is appropriate using a case-by-case analysis based on the totality of the circumstances. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982).

### 1. Substantial and Unanticipated Change

In *Arnold*, the Fourth Circuit held that a change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated *by the parties seeking modification* at the time the plan was confirmed. 869 F.2d at 243 (emphasis added). Although the Fourth Circuit did not define the term "substantial," the court held in *Arnold* that an increase in the debtor's annual salary from $80,000 to $200,000 was a substantial change, and that if it was "anticipated," the debtor's "expectations should have been disclosed to the bankruptcy court before the original . . . plan was confirmed." *Id*. In *Murphy,* the court found that the proceeds received by the debtor on the sale of his condominium represented a substantial improvement in the debtor's financial

---

[4] The Trustee noted that the "substantial and unanticipated" standard articulated in *Arnold* and *Murphy* has been questioned by other circuit courts; however, this court remains bound by this precedent. Similarly, the Hunsuckers maintain that *Murphy* and *Carroll* are wrongly decided; this court is also bound by those holdings. The parties' arguments on those issues are preserved for appeal.

condition where the value increased by 51.6 percent, from the scheduled value of $121,000 to $235,000, in only eleven months. *Murphy*, 474 F.3d at 153.[5]

Mrs. Hunsucker did not argue that the receipt of the Funds was not substantial, or that it was anticipated. Instead, she argued a change in the liquidation value of the estate is not the type of "change" contemplated in *Arnold* and therefore is not an appropriate basis for plan modification.[6] Rather, she contends that the exclusive basis for a non-debtor plan modification is an increase in ongoing disposable monthly income or similar *budgetary* changes. Ironically, the debtor in *Arnold* made precisely the opposite argument: there, the trustee sought modification based on the debtor's increased income from his labor, and the debtor maintained that increases in chapter 13 payments should be limited "to those cases in which a person's income has jumped dramatically through no real effort of his own," citing cases in which the debtor received a significant inheritance and won the lottery. *See Arnold*, 869 F.2d at 242 (citations omitted).

Neither the statutory language nor the governing cases in this circuit are so limited.[7] Section 1329 allows "the debtor, the trustee, or the holder of an allowed unsecured claim" to request modification to, among other reasons, "increase or reduce the amount of payments on claims . . . ." 11 U.S.C. § 1329(a)(1). *Carroll* and *Murphy* required plan modification based on the receipt of property of the estate postconfirmation and based on postpetition appreciation in value

---

[5] In contrast, the *Murphy* court also found (in considering a second case before it) that cash received by the debtors upon refinancing their residence was not a substantial improvement in the debtors' financial situation, as they simply exchanged one debt for another: "The apparent increase in their balance sheet was offset by the amount of the loan, resulting in virtually no change to their financial condition." 474 F.3d at 150.

[6] Mrs. Hunsucker also contends that in this case, confirmation of the Plan could only be set aside pursuant to § 1330 (which requires a showing of fraud and must have been requested within 180 days of confirmation, or April 2, 2023).

[7] This argument was also considered and rejected by the bankruptcy court in *In re Croniser*, Case No. 20-00410-5-DMW, 2022 WL 3639413, at *4-5 (Bankr. E.D.N.C. August 23, 2022), and affirmed by the district court in *Croniser v. Logan*, No. 5:22-cv-00352-D, 2023 U.S. Dist. LEXIS 102067, at *14 (E.D.N.C. Jun. 12, 2023).

9

of property of the estate, respectively. Further, Mrs. Hunsucker's receipt of the Funds is more than just a change in the liquidation value of her chapter 13 estate. The Funds directly impact both her cash flow and her ability to pay creditors. And, as discussed below, the fact of the change by itself is not sufficient to require modification; any proposed modification must also be considered under all of the circumstances. The dual rulings in *Murphy* demonstrate that the court must consider how the relevant "change" impacts the reality of the debtor's financial condition.

      Having determined that *budgetary* changes are not the sole basis upon which a trustee may seek modification, the court returns to the controlling standard: the fact, or lack thereof, of a substantial and unanticipated change. The court concludes that here, a substantial and unanticipated change did occur. At the time the Hunsuckers' Plan was confirmed, there was no indication in the schedules, the petition, or the Plan that Mrs. Hunsucker had an interest in the Trust. At confirmation, those filings – the schedules, the petition, and the Plan – were the sole sources of determining Mrs. Hunsucker's financial condition. Schedule I lists the Hunsuckers' combined monthly income as approximately $5,000 from Social Security and a pension/retirement fund, D.E. 10 at 23, and no potential sources of any other future sums were identified. Because Mrs. Hunsucker's interest in the Trust was unknown at confirmation, it could not have been reasonably anticipated that she would subsequently receive the Funds. Nor is there any doubt as to this change being substantial in nature, given that the amount of the Funds ($100,000) is significantly greater than the amount of income the Hunsuckers would otherwise expect to receive in a calendar year. Based on *Arnold* and *Murphy*, the court concludes that Mrs. Hunsucker's receipt of the Funds constitutes a substantial change to the Hunsuckers' financial condition that could not have been reasonably anticipated by the party seeking modification at the time the plan was confirmed.

### 2.	Section 1329(a) Timing and Purpose of Proposed Modification

The second factor requires the court to determine whether the purpose of the proposed modification is one identified in § 1329(a). *Murphy*, 474 F.3d at 150. Section 1329(a) provides, in relevant part, that at any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified upon request of the debtor, the trustee, or the holder of an allowed unsecured claim to, among other reasons, increase or reduce the amount of payments on claims of a particular class provided for by the plan. 11 U.S.C. § 1329(a)(1).

The Motion was filed after confirmation and prior to completion of plan payments, and requests modification of the Plan to increase the dividend to be paid to general unsecured creditors – specifically, to pay in full the one allowed general unsecured claim on which Mrs. Hunsucker is obligated. The Motion sets forth two alternative options for modification of the Plan: modify the Plan either to (1) require the Hunsuckers make one lump sum payment to pay the Claim in full or (2) increase the amount of the monthly plan payments to pay the Claim in full over the life of the Plan. It is readily apparent that the proposed modification is both timely and limited to the purposes set forth in § 1329(a)(1).

### 3.	Section 1329(b)(1) Confirmation Requirements

Finally, under the third factor, § 1329(b)(1) provides that a modified plan must meet certain confirmation requirements, namely the requirements of §§ 1322(a) and (b), § 1323(c), and § 1325(a). Mrs. Hunsucker does dispute whether the modification comports with §§ 1322(a) and (b), and § 1323(c) – it does – but argues that the modification is not required by the best interest of creditors test embodied in § 1325(a)(4), and is not proposed in good faith as required by § 1325(a)(3).

11

### a. The Best Interest of Creditors Test

Section 1325(a)(4) provides that the court shall confirm a plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4). In other words, unsecured creditors must receive under the plan at least as much as they would receive if the debtor's property were liquidated in a chapter 7 case. This requirement is colloquially known as the "liquidation test." Neither *Murphy* nor *Carroll* provide clear guidance on how to apply the liquidation test at modification, as both instead required modification based on a postconfirmation increase in the debtor's ability to pay creditors rather than recalculation of the liquidation test. Accordingly, this court could infer that upon finding that the Funds are property of the estate, *Murphy* and *Carroll* mandate modification. However, Mrs. Hunsucker advanced several arguments that merit discussion by the court.

### i. When and How to Conduct the Liquidation Test

There is a split of authority as to whether, when a chapter 13 plan is modified, the liquidation test should be calculated as of the petition date[8] or the date of modification. *See, e.g., In re Taylor*, 631 B.R. 346 (Bankr. D. Kan. 2021); *In re Madrid*, No. 19-42260-MJH, 2023 WL 3563019 (Bankr. W.D. Wash. May 18, 2023); *In re Lombardi*, 551 B.R. 84 (Bankr. D. Mass. 2016). The majority of courts hold that the "effective date" of a modified plan is the date of the modification, and the liquidation analysis must be reapplied as of the time of the modification. *See, e.g., In re Barbosa*, 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd*, 235 F.3d 31 (1st Cir. 2000); *In re Auernheimer*, 437 B.R. 405 (Bankr. D. Kan. 2010); *In re Moran*, No. 08-60201-RLJ-13, 2012 WL

---

[8] Some courts consider the effective date of the original plan to be the petition date, while others consider it to be the confirmation date.

4464492 (Bankr. N.D. Tex. Sept. 25, 2012). A minority of courts have held that because the Bankruptcy Code contemplates only one plan, the original confirmation date remains the effective date for modification purposes. *See, e.g. In re Forbes*, 215 B.R. 183, 189 (8th Cir. BAP 1997) (holding that the effective date of the plan is not altered by a plan modification and therefore postpetition, postconfirmation assets are not included in the liquidation analysis for purposes of approving a modified plan); *In re Gibson*, 415 B.R. 735, 739-40 (Bankr. D. Ariz. 2009) (holding that "the effective date of the plan" is the date of confirmation unless the plan specifies a different date).

As a result, part of the disagreement among the courts leads to the question of whether the liquidation test compares only what creditors would have received had the case initially been filed under chapter 7, or if it instead compares what creditors would receive if the case were converted to one under chapter 7 on the date the modification is considered. *Collier* opines that the test should turn on what would happen if the case were originally filed under chapter 7, noting that

> [t]he best-interests test turns on what would have happened had the debtor filed a chapter 7 case instead of a chapter 13 case. If a chapter 7 case had been filed, only property of the estate under section 541 would have been available to creditors and not the additional property that became property of the estate under section 1306(a). Therefore, property acquired after the petition, other than the limited types that become property of the estate under section 541, is not relevant to application of section 1325(a)(4) to a proposed plan modification.

8 *Collier on Bankruptcy* ¶ 1329.05 [3] (Richard Levin & Henry J. Sommer eds., 16th ed. 2023). In contrast, other courts hold that "adoption of the date of the amendment to the plan as the effective date promotes the purpose of the § 1325(a)(4) best interest test 'to ensure that creditors are not treated any worse in a chapter 13 proceeding than they would be treated in a chapter 7 liquidation.'" *Taylor*, 631 B.R. at 352 (quoting *In re Davenport*, No. 08-41213, 2011 WL 6098068 (Bankr. D. Kan. Dec. 7, 2011)).

One reason courts struggle with the applicable date is that property of a chapter 7 estate upon conversion may or may not be the same as the property of the estate on the petition date or the property of the chapter 13 estate on the modification date. The bankruptcy court for the District of Kansas described the myriad questions as follows:

> Is it the estate property defined by § 541 applied as of the date of filing? Does it include property within the scope of § 1306, which provides that property of the Chapter 13 estate includes, in addition to property specified in § 541, property acquired after the commencement of the Chapter 13 case? Is § 348(f) to be considered? That section provides that upon good faith conversion from a Chapter 13 case to a Chapter 7 case, the estate of the converted case "shall consist of property of the estate as of the date of filing, that remains in the possession or is under the control of the debtor on the date of conversion."

*Taylor*, 631 B.R. at 351 (internal citation omitted).

Here, of course, the property at issue that impacts the liquidation value of the estate is that described by *Collier* as the "limited type [of property acquired after the petition] that became property of the estate under section 541" – that is, property received through bequest or devise within 180 days of the petition date. If the case had initially been filed under chapter 7, the Funds would have become property of the estate as of the death of Robert Smith on September 24, 2022. If the case were to be converted today, the Funds would be property of the chapter 7 estate under § 348(f) for the same reason. In either circumstance, the Funds would have been property of the estate in a chapter 7 case whether initially filed or upon conversion, and Mrs. Hunsucker's sole general unsecured creditor would have received 100% on its claim.

Similarly, if the court follows those cases that consider expanded property of the estate under § 1306 without regard to § 348(f),[9] the liquidation analysis would require payment of the

---

[9] At least one court determined that an inheritance received 31 months into the plan period would not be property of a chapter 7 estate if the case was converted, but nonetheless required modification to comply with good faith. *See Madrid*, 2023 WL 3563019, at *8. That court found "as a matter of its discretion that the inheritance is a significant improvement in the Debtors' financial condition that warrants increasing the distribution to unsecured creditors." In other words, the asset did not create a liquidation test issue, but the court still ordered modification for payment of the inheritance to unsecured creditors. A

14

Claim in full. The outcome here is the same under any analysis, and for that reason, the court need not take a position on precisely how to assess the liquidation test at modification; the proposed modification is required for the Plan to meet the best interests of creditors test.

### ii. Vesting of Property of the Estate

In addition, Mrs. Hunsucker argues that because she became entitled Funds prior to confirmation by virtue of Robert Smith's death and resultant termination of the Trust and because the Plan provides that property of the estate "vests" in the debtor at confirmation, all property of the estate, including her interest in the Funds, vested in her at confirmation. Thus, she maintains, the estate is now empty and there is no basis upon which to require her to pay any of the Funds to her creditors. Put another way, the argument is that "vesting" of estate property in the debtor upon confirmation, as provided in § 1327(b), renders inoperative § 1306(a)'s inclusion in the estate of property acquired after confirmation or, at the very least, means that preconfirmation property of the estate and proceeds of preconfirmation property of the estate are no longer property of the estate.

The debtors have provided no authority to persuade the court that an undisclosed asset – particularly one that, if known, would have prevented confirmation in the first place – can "vest" at confirmation and therefore be placed outside the jurisdiction of the court.[10] The court need not decide that issue, however, because in *Murphy*, the Fourth Circuit rejected the argument that

---

holding that an asset would not be included in the liquidation test does not mean modification is inappropriate; it simply means that the proposed modified plan *complies* with the liquidation test because creditors will receive at least as much as they would in a case under chapter 7 – which would be less if the asset is not included. Here, the liquidation test requires that Mrs. Hunsucker's creditors receive payment in full.

[10] Even courts with a more liberal view of the meaning of vesting limit it to *disclosed* assets and assets in existence on the date of confirmation. *See, e.g., In re Nott*, 269 B.R. 250, 257 (Bankr. M.D. Fla. 2000) (property of a chapter 13 estate that is in existence and disclosed as of the date of confirmation vests in the debtor pursuant to § 1327(b); inheritance received after confirmation was included in postconfirmation estate and had to be considered in conjunction with best interest of creditors test for plan modification).

15

vesting assets at confirmation precludes modification based on the appreciation of an asset. The *Murphy* court held, quite clearly, that "a debtor cannot use plan confirmation as a license to shield himself from the reach of his creditors when he experiences a substantial and unanticipated change in his income." 474 F.3d at 154 (citing *Arnold*, 869 F.2d at 241-43). *See also Croniser v. Logan*, No. 5:22-cv-00352-D, 2023 U.S. Dist. LEXIS 102067, at *14 (E.D.N.C. Jun. 12, 2023) (adhering to Fourth Circuit precedent and applying *Murphy* standards notwithstanding debtor's argument that *Murphy* was wrongly decided, that other circuits do not follow it, and that amendments to the Bankruptcy Code make *Murphy* obsolete).

Here, the liquidation test requires plan modification, and the Funds are not shielded by any theory of vesting under § 1327.

### b. Section 1325(a)(3) Good Faith

Section 1325(a)(3) requires a plan to be proposed in good faith and not by any means forbidden by law. Mrs. Hunsucker contends that the Trustee's modified plan has not been proposed in good faith as that term and concept are defined in *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982), which is, in main part, "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or sprit of [the Chapter] in the proposal or plan." (citations omitted). Specifically, Mrs. Hunsucker maintains that the court cannot presume good faith based simply on the fact that the Motion was brought by the Trustee, and must instead look to a broader array of factors. The Trustee agreed, and identified the factors that he contends demonstrate good faith.

As to those, the court's assessment of whether a chapter 13 plan has been proposed in good faith is governed by a totality of circumstances inquiry. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986) (citing *Deans,* 692 F.2d at 972). That inquiry focuses on factors such as the

16

percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's prepetition conduct that gave rise to the debts, whether the debts would be dischargeable in a chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces. *Id*.

The Trustee identified the following facts in support of his good faith argument, which the court finds persuasive: there is no hardship on the Hunsuckers to modify the Plan to pay the Claim in full. The full amount of the Claim, $1,398.93, represents a very small percentage of the total amount of the Funds. The Claim is one of only two general unsecured claims in the case and is the only claim on which Mrs. Hunsucker is obligated. The Trustee's Motion provides Mrs. Hunsucker the option of either paying the Claim over the life of the Plan or paying the Claim in a lump sum payment. As stated in *Carroll*, "[w]hen a [chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth." 735 F.3d at 151 (quoting *Arnold*, 869 F.2d at 243); *see also Croniser v. Logan,* 2023 U.S. Dist. LEXIS 102067, at *11. Further, the fact that the *Carroll* court found that plan modification was appropriate on similar facts is compelling. Based on the totality of the circumstances, the court finds that the plan modification is appropriate and proposed in good faith.

Rather than the *Neufeld* factors, Mrs. Hunsucker specifically focuses on the "purpose and spirit" of the Bankruptcy Code language in *Deans* in her argument about good faith, and relies on the history of the Bankruptcy Code and its amendments. She maintains that the incentives Congress provided for debtors who choose to file chapter 13 over chapter 7 are somehow negated if debtors are required to commit postpetition/postconfirmation assets to a modified plan. One of

17

the reasons that Congress incentivizes debtors to choose chapter 13, however, is that creditors are guaranteed to receive at least as much in chapter 13 as they would in a chapter 7 liquidation. *See Deans*, 692 F.2d at 970-71 ("Congress did in fact explicitly set a minimum repayment level for unsecured creditors in § 1325 . . . that the amount paid on each such claim cannot be 'less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7.'").

In this case, as highlighted above, Mrs. Hunsucker's sole general unsecured creditor would receive 100% on its claim in a chapter 7 case, but without a modification of the Plan, it will receive less than one percent on its claim. Here, the purpose and spirit of the Bankruptcy Code can *only* be achieved with a modification.

## CONCLUSION

Based on the foregoing, the court finds that the Funds received by Mrs. Hunsucker are property of the estate under §§ 541(a)(5)(A) and 1306 and that her receipt of them constitutes an appropriate basis for the Trustee to seek modification of the Plan. The court further finds that the modification requested by the Trustee meets the requirements of § 1329, is proper, and should be allowed. Accordingly, the Motion is ALLOWED, and the Hunsuckers' Plan is to be modified to increase the monthly payments to an amount sufficient to satisfy the Claim and associated trustee commissions over the life of the Plan. Because the Motion anticipated the increased plan payments to begin in April 2023, the Trustee is directed to submit an Order Modifying Plan with the appropriate calculations within 14 days of the date of this Memorandum Opinion, with the modified plan payments to begin August 1, 2023, and including the following language as proposed in the Motion:

In addition to the claims currently being paid through the Trustee under the Plan, the Trustee shall pay in full allowed claims of general unsecured creditors on which the female Debtor is individually and/or jointly obligated.

**END OF DOCUMENT**